UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DANIEL D. ARNDT,

        Plaintiff,

        v.                                            Case No. 20-C-1116

KILOLO KIJAKAZI,
Acting Commissioner of Social Security

        Defendant.

## DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION

Plaintiff Daniel Arndt filed this action for judicial review of a decision by the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Arndt asserts that the decision of the administrative law judge (ALJ) is flawed and requires reversal for several reasons. For the reasons that follow, the Commissioner's decision will be reversed and remanded for further proceedings.

### BACKGROUND

Arndt filed applications for disability insurance benefits and supplemental security income on March 28, 2017, alleging disability beginning March 17, 2017, when he was 42 years old. He listed bipolar, attention deficit hyperactivity disorder (ADHD), oppositional defiant disorder (ODD), high cholesterol, asthma, and post-traumatic stress disorder (PTSD) as the conditions limiting his ability to work. R. 264. He explained that because he was struggling with work due to his physical conditions, he decided to stop working and obtain his graduate equivalency diploma (GED). *Id.* After his claims were denied initially and upon reconsideration, Arndt requested a

hearing before an ALJ. R. 13. On April 29, 2019, ALJ Janice Bruning held an administrative hearing at which Arndt, who was represented by counsel, and a vocational expert (VE) testified. R. 37–71.

At the time of the hearing, Arndt was 44 years old and living in a house with his wife and four children. R. 40–41. Arndt had previously worked as a sales representative, sales manager, and customer service representative. He also performed mailroom work, marketing, computer printing, account management, and data entry. R. 42–45.

Arndt testified that he had surgery on his back a couple months before the hearing and is unable to "do a whole lot of things right now." R. 46. He stated that he started physical therapy for stiffness in his neck and speech therapy for his memory problems. *Id.* Arndt testified that he could walk about a third of a block before turning around to go home and that he had trouble walking after he slipped and fell on ice while at work in March 2017. R. 47–48. He explained that he falls a lot and blacks out if he sits up too fast. R. 48. Arndt testified that he could stand for about a half hour at a time and could sit for 30 to 40 minutes at a time. R. 49. He stated that he had difficulty climbing stairs but typically climbs stairs two to three times per day. R. 50. Arndt indicated that he spends three to four hours per day lying down in order to take stress off his shoulder and neck and does almost no chores around the house. R. 51–52. He explained that he drives his children to school and appointments rarely and that his wife does most of the driving. R. 53. He did confirm, however, that he shops and runs errands while his children are in school. R. 54.

As to his mental conditions, Arndt stated that he has been having progressively worsening mental health symptoms since he stopped working. R. 64. He indicated that he has auditory and visual hallucinations every day and goes to Al-Anon for crisis intervention. R. 64–65. He explained that he did not previously complain of mental concerns because he did not trust his

2

psychiatrist or counselor at the time. R. 64. Arndt indicated that he takes medication for his mental health disorders, including anxiety, depression, and schizophrenic disorder. R. 46–47.

In an eighteen-page decision dated June 26, 2019, the ALJ concluded that Arndt was not disabled between March 17, 2017, and the date of the decision. R. 13–30. Following the Social Security Administration's (SSA) five-step sequential evaluation process, the ALJ found that Arndt met the insured status requirements of the Social Security Act through September 30, 2022, and had not engaged in substantial gainful activity since March 17, 2017, the alleged onset date. R. 15. The ALJ determined that Arndt had the following severe impairments: left upper extremity injury/disorder; spinal disorder; right shoulder disorder; asthma; depression; anxiety; schizophrenia; and marijuana use. *Id.* The ALJ found that Arndt did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 16.

The ALJ then determined that Arndt had the residual functional capacity (RFC) to "perform less than the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a)." R. 20. The RFC included additional limitations as follows:

> The claimant can never climb ladders, ropes, or scaffolding and can no more than occasionally climb ramps and stairs, balance, stoop, crouch, kneel, crawl, bend, or twist. He should be provided a sit-stand option allowing him to stand for one or two minutes after sitting for 30 minutes. He should avoid concentrated exposure to lung irritants. The claimant can reach overhead no more than occasionally bilaterally and can use his hands no more than frequently (versus constantly) to handle, finger, and feel. The claimant [can] understand, remember, and carry out no more than simple routine tasks performing the same tasks day in and day out with no public contact and no more than occasional contact with coworkers and supervisors. He should not be required to engage in any teamwork situations (he should not have to work with others to complete the same job tasks(s)), but can work independently. He should have no strict quotas (he should not engage in work where someone is checking up on him throughout the workday to make sure he is on pace with a set goal, quota, or with other employees), but can do work where performance is measured by what is completed by the end of the workday. He cannot perform a job where a machine sets the pace of work.

R. 20–21.  The ALJ determined that Arndt was unable to perform any past relevant work but found that, considering his age, education, work experience, and RFC, he was capable of making a successful adjustment to work existing in significant numbers in the national economy, including final assembler, product stuffer, and eyewear polisher.  R. 28–30.  Based on this finding, the ALJ concluded that Arndt was not disabled from March 17, 2017, through the date of the decision.  R. 30.  The Appeals Council denied Arndt's request for review, making the ALJ's decision the final decision of the Commissioner.  R. 1.

## LEGAL STANDARD

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported [her] decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)).  Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)).  The ALJ "must build an accurate and logical bridge from the evidence to [her] conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the SSA's rulings and regulations.  Failure to do so, unless the error is harmless, requires reversal.  *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006).  In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence,

4

Case 1:20-cv-01116-WCG   Filed 03/24/22   Page 4 of 7   Document 26

or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

Arndt raises a number of challenges to the ALJ's decision, but the Court finds that only one need be addressed because it is enough, by itself, to require a remand. Arndt asserts that the ALJ's decision is flawed because she failed to obtain a medical expert to address the evidence regarding the progression of Arndt's cervical spine impairment since the last state agency review. The state agency consultants reviewed Arndt's medical records in June 2017 and January 2018. At the initial level, the state agency consultant found that Arndt had the ability to perform work at the medium exertional level, but at the reconsideration level, the state agency consultant reduced his ability to a range of light work with postural, manipulative, and environmental limitations. R. 90–91; 116–19. The ALJ found that the consultants' opinions were "somewhat persuasive but, after seeing [the] entire record," concluded that limiting Arndt to work at the sedentary exertional range is more appropriate. R. 26.

Arndt asserts that, after the state agency consultants issued their opinions, he aggravated his neck pain and related symptoms after he fell on the ice twice in February 2018 and had multiple MRIs, X-rays, and CT scans. A July 2018 EMG revealed chronic irritation of the 8th cervical nerve on the right, and a September 2018 MRI revealed "multilevel spondylotic and degenerative changes in the cervical spine, most prominent at C6-C7." R. 1004–05, 1169. An October 2018 MRI showed cervical spondylosis at C3-4, C4-5, and C6-7 with moderate foraminal stenosis bilaterally at C4-5 and the left at C3-4. There was also moderate central stenosis at C6-7 with severe bilateral foraminal stenosis, and Arndt had natural fusion at C5-6. R. 1100–01. Arndt

5

underwent an anterior cervical discectomy and fusion on February 14, 2019. R. 22; *see also* R. 1004, 1158–60.

Arndt argues that the ALJ erred in interpreting the medical records on her own because she is unqualified to determine the significance of new imaging findings that evidenced a progression of his cervical spine impairment. The Seventh Circuit has repeatedly stated that an ALJ may not play doctor and "interpret new and potentially decisive medical evidence without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018). The Commissioner counters that the new evidence did not constitute significant changes to Arndt's condition that would have required new opinions. But "[a]n ALJ may not conclude, without medical input, that a claimant's most recent [imaging] results are 'consistent' with the ALJ's conclusions about her impairments." *Id.* (citation omitted); *see also Kemplen v. Saul*, 844 F. App'x 883, 888 (7th Cir. 2021) ("[T]he ALJ must seek an additional medical opinion if there is potential decisive evidence that postdates the state agency consultant's opinion." (citation omitted)). In *Akin v. Berryhill*, the Seventh Circuit held that the ALJ erred in impermissibly evaluating MRI results that had not been interpreted by a physician. 887 F.3d 314, 317 (7th Cir. 2018). The court reasoned that "without an expert opinion interpreting the MRI results in the record, the ALJ was not qualified to conclude that the MRI results were 'consistent' with his assessment." *Id.* It further explained:

> The MRI results may corroborate Akin's complaints, or they may lend support to the ALJ's original interpretation, but either way the ALJ was not qualified to make his own determination without the benefit of an expert opinion. The ALJ had many options to avoid this error; for example, he could have sought an updated medical opinion. *See Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000). But because the ALJ impermissibly interpreted the MRI results himself, we vacate the judgment and remand this case to the agency.

*Id.* at 317–18.

This Court has previously recognized the difficulties the ALJ and the Agency face in ensuring a state agency physician reviews the claimant's medical record in its entirety before

6

completing an assessment, especially when claimants continue to receive treatment up to, and even after, the date of the administrative hearing. *See Appel v. Saul*, No. 18-C-1433, 2019 WL 4464805 (E.D. Wis. Sept. 18, 2019). Under the law of this circuit, however, the ALJ's failure to obtain an updated medical opinion in light of the new medical evidence constitutes reversible error. The case will be remanded on this basis.

## CONCLUSION

For these reasons, the decision of the Commissioner is **REVERSED** and **REMANDED** to the SSA pursuant to 42 U.S.C. § 405(g) (sentence four). Although the decision is reversed because of the ALJ's failure to obtain an updated medical opinion in light of the new medical evidence, the Commissioner should also address Arndt's other claims of error, that the ALJ erred in relying on outdated opinions of the state agency psychologists given Arndt's later schizoaffective diagnosis, the ALJ did not build an accurate and logical bridge from the evidence to her conclusion regarding Arndt's manipulative abilities, and the ALJ's assessment that Arndt was not persuasive rests on a series of factual and logical errors, on remand. Further consideration of these claimed errors on remand will aid in reaching the final resolution of the case and avoid further remands in the future. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 24th day of March, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge